IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES MUNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-cv-88-DWD |
| | ) |
| KEVIN KINK | ) |
| JOHN BALDWIN, | ) |
| C. BROOKS,[1] | ) |
| MS. TRODDER,[2] | ) |
| GOINES,[3] | ) |
| DR. BOOSE,[4] and | ) |
| WARDEN OF LAWRENCE | ) |
| CORRECTIONAL CENTER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff James Munson brings Eighth Amendment claims against Defendants, alleging that the conditions he suffered and the lack of adequate medical attention he received at Lawrence Correctional Center ("Lawrence") violated his constitutional rights. Additionally, Munson brings a First Amendment retaliation claim alleging that Defendants placed him in segregation because he complained about pests and rodents at

---

[1] Defendant Christine Brooks' sworn declaration provides her full name. (Doc. 68-5) Accordingly, the Clerk is **DIRECTED** to correct Defendant Brooks' name in the docket to "Christine Brooks."
[2] Defendant Lyndsey Trotter's sworn declaration provides her full, correctly spelled name. (Doc. 68-4) Accordingly, the Clerk is **DIRECTED** to correct Defendant Trotter's name in the docket to "Lyndsey Trotter."
[3] Defendant Russell Goins' sworn declaration provides his full, correctly spelled name. (Doc. 77-4) Accordingly, the Clerk is **DIRECTED** to correct Defendant Goins' name in the docket to "Russell Goins."
[4] Defendant Teresa Boose's sworn declaration provides her full legal name. (Doc. 77-5) Accordingly, the Clerk is **DIRECTED** to correct Defendant Boose's name in the docket to "Teresa Boose."

Lawrence. Before the Court are Defendants' motions for summary judgment and motion to strike. (Docs. 67, 76 & 87) The motions are fully briefed and ripe for decision. (Docs. 68, 77, 85–88, 93 & 96) For the following reasons, the motions for summary judgment are due to be granted, and the motion to strike is due to be denied as moot.[5]

## I. FACTUAL & PROCEDURAL HISTORY

Munson filed his complaint on January 30, 2019. (Doc. 1) After screening Munson's complaint pursuant to 28 U.S.C. § 1915, the Court permitted Munson to proceed on four specific claims:

**Count 1:** Eighth Amendment claim against Defendants for subjecting Plaintiff to unconstitutional conditions of confinement at Lawrence by exposing him to rodents, spiders, and bugs that posed a serious risk of harm to his health.

**Count 2:** Eighth Amendment claim against Defendants for exhibiting deliberate indifference to Plaintiff's serious medical needs that resulted from undiagnosed and untreated rodent, spider, and/or bug bites and suspected infections at Lawrence.

**Count 3:** Eighth Amendment claim against Defendants for exhibiting deliberate indifference to Plaintiff's mental health issues that resulted from his exposure to rodents, spiders, and bugs at Lawrence.

**Count 4:** First Amendment retaliation claim against Defendants for placing Plaintiff in segregation because he complained about the rodent, spider, and bug infestations at Lawrence and requested rabies testing of a rodent.

(Doc. 8 at 3) The Court also ruled that Count 3 would proceed only against Defendants

---

[5] In their motion to strike, Defendants object to an exhibit attached to Munson's response brief and purporting to be the Illinois Department of Corrections Nursing Treatment Protocols. (*See* Doc. 86 at 10–103) Because the Court does not rely on this exhibit in granting summary judgment for Defendants, the motion to strike is moot.

2

Boose and Trotter and that Count 4 would proceed only against Defendants Kink and Brooks. (Doc. 8 at 6)

Munson has been incarcerated at Lawrence since February 2017. (Doc. 68-1 at 45) He has seen rodents in multiple housing units, the kitchen, and the dining area at Lawrence. (Doc. 68-1 at 106–07, 118) But he was bitten by a rodent on only one occasion: July 25, 2018. (Doc. 68-1 at 62 & 108) At that time, Munson was living in housing unit 5 in the general population. (Doc. 68-1 at 85) He was awakened on the morning of July 25 by a prick on his hand. (Doc. 68-1 at 66) When he woke up, he saw a mouse near his leg and quickly killed it. (Doc. 68-1 at 66) He pressed the panic button, and a guard came and took him to the healthcare unit. (Doc. 68-1 at 66–67)

When Munson arrived at the healthcare unit, he was treated by Defendant Christine Brooks, a nurse at Lawrence. (Doc. 68-1 at 61) Munson brought the mouse with him hoping to have it tested for rabies, but Brooks told him that the healthcare unit does not test animals for rabies. (Doc. 68-1 at 61) Brooks noted that Munson had a "tiny scratch" on his little finger but that there was no exchange of body fluids. (Doc. 68-2 at 1) She noted that Munson was experiencing pain but no swelling, redness, or bleeding. (Doc. 68-2 at 1) Munson claims that his finger was red and probably swollen. (Doc. 68-1 at 80) Brooks "cleaned the area of the alleged bite, applied triple antibiotic ointment, and applied a band aid." (Doc. 68-5 at 1) She noted that he had already been prescribed naproxen, anti-inflammatory and pain medication. (Doc. 68-5 at 1) Brooks did not believe a tetanus shot was necessary because Munson's scratch was superficial and he was not exhibiting the signs of a tetanus infection: headaches, muscle stiffness, and lockjaw. (Doc.

68-5 at 2) But she did tell Munson to come back to the healthcare unit if his finger hurt or stiffened up. (Doc. 68-5 at 1–2) Munson's finger eventually healed, and he does not know if he ever developed a tetanus infection. (Doc. 68-1 at 118–19) Brooks reported the incident to the shift commander as she was required to do. (Doc. 68-1 at 97)

On July 31, 2018, Munson was moved to segregated housing for 28 days, where he first met Defendant Lyndsey Trotter. (Doc. 68-1 at 82, 89 & 122) Trotter is a qualified mental health professional but is not allowed to prescribe medication. (Doc. 68-4 at 1) Complaining of having nightmares about rodents, Munson asked Trotter for something to help him sleep, and she gave him a sleep hygiene kit. (Doc. 68-1 at 124–25) Munson never reported sleep problems to Trotter after she gave him the sleep hygiene kit. (Doc. 68-4 at 2)

Munson also reports sending a letter on November 9, 2018, to Defendant Teresa Boose, the Mental Health Authority for Lawrence, seeking mental health treatment. (Doc. 68-1 at 164) Boose never received a letter from Munson and did not become aware of his mental health needs until June 2019. (Doc. 77-5 at 1–2) Boose then referred Munson for a mental health screening, which resulted in "a determination for need of services- counseling and/or psychiatric services." (Doc. 77-5 at 2) Munson had no contacts with mental health staff at Lawrence prior to Boose's referral in June 2019. (Doc. 77-5 at 1–2)

On August 8 and 22, 2018, Munson reported seeing bugs in his cell in segregation. (Doc. 68-3 at 1–2) While at Lawrence, insects, bugs, and spiders were a problem for Munson only while he was in segregation, not in general population housing. (Doc. 68-1 at 117) Pests would enter through the window that Munson left open because he did not

4

have a fan in his cell. (Doc. 68-1 at 115) Trotter testified that she did not observe any obvious infestations in Munson's cells in segregation or housing unit 5. (Doc. 68-4 at 2) Trotter also noted that there was no mental decompensation from his time in segregation. (Doc. 68-3 at 1–2)

Munson reported a bug bite on August 17, 2018, and a nurse noted a small, raised area on the right side of his neck. (Doc. 68-2 at 7) Munson was seen by a nurse again on August 23 for his bug bites, but the nurse did not observe any bites. (Doc. 68-2 at 11) On both occasions, Munson was given hydrocortisone cream to treat his bites. (Doc. 68-2 at 7 & 11) Munson also obtained mineral oil from other inmates which he used to treat his bites. (Doc. 68-1 at 119) When Munson filed a grievance in July 2018, he was told that the prison pays an outside contractor to spray the cell houses regularly for pests, although the individual cells are not sprayed for the safety of the inmates. (Docs. 68-1 at 120 & 68-6 at 1) He was told even more specifically in response to a grievance filed in August that the contractor comes every month to spray for pests and check traps for rodents. (Doc. 68-6 at 8) Munson also saw an exterminator on July 24, 2018, who told him that he would spray for pests if Munson put in a request. (Doc. 68-1 at 104–05) Munson did not submit a request at that time. (Doc. 68-1 at 105)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  *See*

5

*Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir. 2014) (citing Fed. R. Civ. Proc. 56(a)). *Accord Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.,* 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, and as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

### III. DISCUSSION

Munson brings Eighth Amendment claims alleging unconstitutional conditions of confinement and deliberate indifference to his medical needs. He also brings a First Amendment retaliation claim. The Court addresses each claim in turn.

**A.     Eighth Amendment: Conditions of Confinement**

The Eighth Amendment prohibition on cruel and unusual punishment forbids the unnecessary and wanton infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citation omitted). To succeed on a claim related to conditions of confinement, a plaintiff

6

must establish both an objective and subjective element. *See Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008). As to the objective element, a prisoner must establish that the conditions deny him "the minimal civilized measure of life's necessities," creating an excessive risk to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To do so, he must show that the conditions resulted in an unquestioned and serious deprivation of basic human needs such as food, medical care, sanitation, or physical safety. *See Rhodes*, 452 U.S. at 347. The Eighth Amendment "does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001). Rather, "extreme deprivations are required to make out a conditions-of-confinement claim." *Turner v. Miller*, 301 F.3d 599, 603 (7th Cir. 2002) (citations and quotations omitted). Courts "consider the totality of the conditions of confinement to determine whether a prisoner has been deprived of basic human needs." *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989).

The subjective component of a claim for unconstitutional conditions of confinement requires demonstrating that a defendant had a culpable state of mind, that is that a defendant acted with deliberate indifference to a substantial risk of serious harm to the prisoner. *See Farmer*, 511 U.S. at 837, 842. While mere negligence does not amount to a constitutional violation, a plaintiff satisfies the deliberate indifference standard by showing that a prison official acted, or failed to act, despite the official's knowledge of a substantial risk of serious harm from the alleged unconstitutional conditions. *See Farmer*, 511 U.S. at 842; *Davidson v. Cannon*, 474 U.S. 344, 347-348 (1986). That is, prison officials

must act to prevent "unreasonable peril" or to address "preventable, observed hazards that pose a significant risk of severe harm to inmates." *Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir. 2016).

Munson claims that his exposure to rodents, spiders, and bugs at Lawrence created unconstitutional conditions of confinement. An infestation of pests and rodents may provide a claim for unconstitutional conditions of confinement. *Antonelli v. Sheehan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (holding that plaintiff stated an Eighth Amendment claim by alleging that despite two pest-control sprayings in a 16-month period, cockroaches and mice were everywhere, crawling on his body, constantly awakening him, and causing significant physical harm). However, an infestation must be prolonged and cause significant physical harm to amount to a constitutional deprivation. *See Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) (citing *Antonelli*, 81 F.3d at 1431). For example, a "cockroach infestation" does not create unconstitutional conditions of confinement when several cockroaches were present in a cell during a six-year period and the plaintiff was bitten by a cockroach twice but an exterminator visited the cell monthly and would come in response to the plaintiff's complaints. *Id.*

The evidence does not establish that Munson suffered significant harm from a prolonged exposure to pests and rodents. He testified to seeing rodents in multiple housing units at Lawrence as well as in the kitchen and dining area. However, he was bitten on only one occasion: July 25, 2018. Further, he concedes that Lawrence hired an exterminator to set traps for rodents on a monthly basis. As to bugs and spiders, Munson testified that they were only a problem in the segregation unit, where he was housed for

only 28 days, and that they entered through the window he opened. Further, Lawrence hires an exterminator to spray for pests monthly, although the exterminator does not spray inside the inmates' cells for their safety. Munson also reports that the exterminator would spray on request. Finally, as discussed in Part III.B., there is no evidence that Munson suffered significant physical harm from the rodents, spiders, or bugs. On this record, no reasonable jury could find that Munson's conditions of confinement were objectively serious enough to violate the Eighth Amendment.

**B.     Eighth Amendment: Deliberate Indifference to Medical Needs**

Munson also brings Eighth Amendment claims for deliberate indifference to his medical and mental health needs caused by rodents, bugs, and spiders. To establish an Eighth Amendment claim related to medical needs, "an inmate must be suffering from a serious medical need to which prison officials are deliberately indifferent." *Thomas v. Walton*, 461 F. Supp. 2d 786, 793 (S.D. Ill. 2006). "A medical need is 'serious' if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain." *Id.* (quoting *Wilson v. Vannatta*, 291 F. Supp. 2d 811, 816 (N.D. Ind. 2003)). Further, "a plaintiff must show 'substantial harm' as a result of a delay in receiving medical care." *Thomas v. Walton*, 461 F. Supp. 2d 786, 794 (S.D. Ill. 2006); *see also Gibson v. McEvers*, 631 F.2d 95, 98 (7th Cir. 1980).

Munson brings a deliberate-indifference claim based on his allegations that he

9

suffered untreated pain and infection from the rodent bite on July 25, 2018. Specifically, Munson claims that he should have received a tetanus shot to treat what he believes might have been a tetanus infection resulting from the bite. The record shows that Brooks treated Munson's bite by cleaning it and applying antibiotic ointment and a band aid. Munson has provided no evidence that he developed a tetanus infection or that his bite should have been treated with a tetanus shot. In fact, he admitted that his finger is now fully healed and in good condition. Thus, no reasonable jury could find that the rodent bite caused a serious medical need that a physician failed to treat and that resulted in substantial harm.

He has also not shown deliberate indifference as to his alleged bug and spider bites. First, Munson's medical records note one small, raised area on his neck on August 17, 2018. Munson was seen for bug bites again on August 23, but the medical records indicate no bug bites were observed. Nevertheless, Munson received hydrocortisone cream on both occasions. Even assuming that Munson was bitten as often as he claimed, there is no evidence that the bites constituted a serious medical need or caused him substantial harm. Further, the medical staff at Lawrence provided hydrocortisone to treat his bug bites. Thus, no reasonable jury could find that Munson's bug bites constituted a serious medical need to which prison officials were deliberately indifferent.

Munson's claims for deliberate indifference to his mental health concerns are directed only at Defendants Boose and Trotter. He alleges that during his time in segregation, he had difficulty sleeping due to frequent nightmares and anxiety about rodent and bug bites. He claims that he informed Trotter and sought mental health

10

treatment. He claims that she failed to adequately respond to his mental health needs. He also claims that he wrote a letter to Boose seeking treatment for his mental health needs but Boose never responded.

However, Munson has not produced evidence of an "objectively serious medical need." *See Jenkins v. Frisch*, 773 F. App'x 310, 312 (7th Cir. 2019). He claims that a Dr. Penk diagnosed him with a mental health disorder in early 2020. (Doc. 68-1 at 24) And Boose, the Mental Health Authority for Lawrence, testified that Munson had no contact with mental health staff and no mental health referrals from August 2017 to June 2019. She also testified that she first learned of Munson's "distress/symptomatic response to a rodent bite" in June 2019, after which she referred him for a mental health evaluation "from which a determination for need of services-counseling and/or psychiatric services" was made for Munson. (Doc. 77-5 at 2) Thus, the record provides no evidence of Munson having a diagnosed mental health condition until nearly a year after he was placed in segregation for 28 days.

Even if there were evidence documenting Munson's alleged mental health condition, there is no evidence of deliberate indifference. He provides no evidence that Boose knew about his alleged symptoms prior to June 2019, when she testifies that she first learned of his complaints. And Trotter responded to Munson's complaints of inability to sleep by providing him with a sleep hygiene kit. She noted no mental decompensation during her rounds and did not observe "any serious medical or mental health needs of Mr. Munson." (Doc. 68-4 at 2) Munson never made additional complaints regarding his sleep or mental health to Trotter after she provided the sleep hygiene kit.

Thus, the Court finds that no reasonable jury could find that Munson suffered from a serious medical need regarding his mental health to which Boose or Trotter were deliberately indifferent.

### C.  First Amendment: Retaliation

Munson alleges that Kevin Kink, the Warden of Lawrence, and Brooks violated his First Amendment rights by retaliating against him for complaining of rodent and pest infestation and asking that a mouse be tested for rabies. "To prove that prison officials retaliated against an inmate . . . , the inmate must demonstrate that (1) he or she engaged in constitutionally-protected conduct and (2) such conduct was a substantial or motivating factor behind the allegedly retaliatory acts." *Thomas*, 461 F. Supp. 2d at 795.

As to Kink, Munson points out that Kink signed all of his grievances and as warden was ultimately responsible for his placement in segregation. (Doc. 68-1 at 187) However, Munson has provided no evidence showing that his grievances were a motivating factor for Kink's decision to place him in segregation. The mere fact that Kink placed Munson in segregation shortly after he filed his grievance does not show causation. *See* Thomas, 461 F. Supp. 2d at 795 ("However, at the summary judgment stage, [mere chronology] is not enough to show a genuine issue for trial."). Therefore, no reasonable jury could find that Kink placed Munson in segregation in retaliation for Munson's grievances.

Munson's retaliation claim against Brooks amounts to speculation, guesses, and assumptions. For starters, there is no documented evidence in the record showing that

Brooks played any role in Munson's placement in segregation. The only evidence supporting Munson's theory is his claim that an officer told him that Brooks was angry with the officer for allowing Munson to bring a rodent into the healthcare unit and that Brooks reported the incident to the shift commander. (Doc. 68-1 at 95–96) Yet, he offers no evidence showing that she had any authority to place him in segregation or that her report to the shift commander played any role in the ultimate decision to place him in segregation. In fact, he ascribes the ultimate decision to Daniel Downen, the clinical services supervisor at Lawrence, Defendant Russell Goins, Assistant Warden of Operations at Lawrence, and Kink. (Doc. 68-1 at 184–85)

Further, Munson has not shown that Brooks reacted to any constitutionally protected speech that he made. He concedes that he does not know if she had any knowledge of the grievance he filed in June 2018. (Doc. 68-1 at 99) And when describing the officer's explanation of Brooks' anger, Munson said that Brooks was angry at the officer because the officer "allowed me to take the rodent over to the healthcare." (Doc. 68-1 at 95) Munson has made no showing that his action in taking the rodent to the healthcare unit is constitutionally protected speech. For these reasons, no reasonable jury could find that Brooks played a role in placing Munson in segregation in retaliation for constitutionally protected speech.

## IV.  CONCLUSION

For these reasons, Defendants' motions for summary judgment (Docs. 67 & 76) are **GRANTED**, and this action is **DISMISSED WITH PREJDUICE**. Defendants' motion to

strike (Doc. 87) is **DENIED AS MOOT**. The Clerk of Court is **DIRECTED** to correct the names of the defendants in the docket as described in footnotes 1–4. The Clerk of Court is further **DIRECTED** to enter judgment accordingly.

So Ordered.

Entered this the 9th Day of September 2012

_____
David W. Dugan
United State District Judge